UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WIAV SOLUTIONS INC.,

                        Plaintiff,

          - against -

HTC CORPORATION,

                     Defendant.

Civil Action No. 1:19-CV-4978-PGG

## DEFENDANT HTC CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

HAYNES AND BOONE, LLP
*Attorneys for Defendant*
*HTC Corporation*
Jonathan D. Pressment
Alexandra Larkin
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
Telephone: 212-659-7300
Facsimile: 212-884-9561
jonathan.pressment@haynesboone.com
alexandra.larkin@haynesboone.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................... iii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ..................................................................................5

    A.    The Parties ...........................................................................5

    B.    The Agreement.....................................................................5

    C.    WiAV's Prior Attempts To Extract Additional Payments From HTC ...................6

        1.    The State Court Action ............................................6

        2.    WiAV's Appeal Of The State Trial Court's Decision .................8

        3.    The First Federal Action .........................................8

    D.    This Action..........................................................................9

ARGUMENT ......................................................................................................9

I.    STANDARDS APPLICABLE TO THE INSTANT MOTION ...........................................9

II.    THE MICROSOFT TRIGGERING EVENT CLAIM (COUNT I) MUST BE DISMISSED ..................................................................................11

    A.    The Microsoft Triggering Event Claim Is Barred By *Res Judicata* .....................11

    B.    The Complaint Fails To Set Forth Sufficient Allegations To Support The Microsoft Triggering Event Claim ................................14

III.    THE ADDITIONAL TRIGGERING EVENTS CLAIM (COUNT III) MUST BE DISMISSED ..................................................................................16

    A.    The Additional Triggering Events Claim Is Barred By *Res Judicata* ..................16

    B.    The Complaint Fails To Set Forth Sufficient Allegations To Support The Additional Triggering Events Claim.................................18

IV.    THE CHINESE TRIGGERING EVENT CLAIM (COUNT II) MUST BE DISMISSED ..................................................................................20

V.      IN ANY EVENT, WIAV IS NOT ENTITLED TO COSTS OR
        ATTORNEYS' FEES .......................................................................................................23

CONCLUSION ...........................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Aard-Vark Agency, Ltd. v. Prager,*
    8 A.D.3d 508 (2d Dep't 2004) .......................................................................................11, 13, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................................................5, 10, 15

*BankUnited, N.A. v. Merritt Envtl. Consulting Grp.,*
    360 F. Supp. 3d 172 (S.D.N.Y. 2018) .............................................................................10, 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................................................................................10

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ...............................................................................................11, 15

*Chira v. Lockheed Aircraft Corp.,*
    520 F. Supp. 1390 (S.D.N.Y. 1981) .......................................................................................12

*DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,*
    747 F.3d 145 (2d Cir. 2014) .....................................................................................................21

*Falardo v. New York City Police Dept.,*
    566 F. Supp. 2d 283 (S.D.N.Y. 2008) ...................................................................................12

*Hooper Assocs., Ltd. v. AGS Computers, Inc.,*
    74 N.Y.2d 487 (1989) ..........................................................................................................23, 24

*Klein v. City of New York,*
    No. 10 Civ. 9568 (PAE) (JLC), 2011 WL 5248169 (S.D.N.Y. Oct. 28, 2011) ......................21

*Krumme v. WestPoint Stevens Inc.,*
    238 F.3d 133 (2d Cir. 2000) .....................................................................................................22

*In re Lehman Brothers Holdings Inc.,*
    No. 16-cv-487 (CM), 2016 WL 7377272 (S.D.N.Y. Dec. 13, 2016) ......................................24

*Lockheed Martin Corp. v. Retail Holdings, N.V.,*
    639 F.3d 63 (2d Cir. 2011) .......................................................................................................20

*Maharaj v. Bankamerica Corp.,*
    128 F.3d 94 (2d Cir. 1997) .......................................................................................................11

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.,*
    13-cv-6551 (TPG), 2014 WL 4058321 (S.D.N.Y. Aug. 15, 2014) .........................................23

*Monahan v. New York City Dept. of Corrections*,
　214 F.3d 275 (2d Cir. 2000)................................................................................11

*Nguyen v. FXCM Inc.*,
　364 F. Supp. 3d 227 (S.D.N.Y. 2019)...............................................................18

*Oscar Gruss & Son, Inc. v. Hollander*,
　337 F.3d 186 (2d Cir. 2003)...............................................................................24

*Ottah v. BMW*,
　230 F. Supp. 3d 192 (S.D.N.Y. 2017)...............................................................16

*Penades v. Republic of Ecuador*,
　No. 18 Civ. 4493 (AT), 2019 WL 3751401 (S.D.N.Y. Aug. 8, 2019) ....................13

*Poindexter v. EMI Record Grp. Inc.*,
　No. 11 Civ. 559 (LTS) (JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ........16

*Roth v. Jennings*,
　489 F.3d 499 (2d Cir. 2007)........................................................................10, 15

*Saud v. Bank of New York*,
　929 F.2d 916 (2d Cir. 1991)...............................................................................14

*Schorr v. Dopico*,
　205 F. Supp. 3d 359 (S.D.N.Y. 2016)...............................................................18

*Swan Media Grp., Inc. v. Staub*,
　841 F. Supp. 2d 804 (S.D.N.Y. 2012)....................................................10, 11, 15

*Temple v. Hudson View Owners Corp.*,
　222 F. Supp. 3d 318 (S.D.N.Y. 2016)...............................................................15

*Thompson v. Cty. of Franklin*,
　15 F.3d 245 (2d Cir. 1994)................................................................................10

*WiAV Solutions, Inc. v. HTC Corp.*,
　148 A.D.3d 587 (1st Dep't 2017) ......................................................................16

*Williams v. Citibank, N.A.*,
　565 F. Supp. 2d 523 (S.D.N.Y. 2008)...............................................................16

*Wolff v. Rare Medium, Inc.*,
　171 F. Supp. 2d 354 (S.D.N.Y. 2001)...............................................................23

*Yonkers Const. Co. v. Port Auth. Trans-Hudson Corp.*,
　93 N.Y.2d 375 (1999) ........................................................................12, 13, 17

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. *passim*

HTC Corporation ("HTC") respectfully submits this memorandum of law in support of its motion to dismiss the complaint (the "Complaint") filed by Plaintiff WiAV Solutions Inc. ("WiAV") pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").

## PRELIMINARY STATEMENT

WiAV's approach to litigation can best be summarized as follows: "if at first you don't succeed, try, try again." Indeed, WiAV's Complaint marks the *second* time that WiAV has sued HTC for an alleged breach of the parties' June 2009 Patent Rights Purchase and Covenant Not to Sue Agreement (the "Agreement") in just over a year, and the *third* time that WiAV has sued HTC for an alleged breach of the very same Agreement in the last six years.

To date, none of WiAV's attempts to hold HTC liable for alleged breaches of the Agreement have been successful. In fact, HTC has twice been awarded costs for having to defend against WiAV's baseless claims. At this point, WiAV's breach of contract claims appear to draw far more from the "law of *averages*" than the law of *contracts*. But the third time is *not* the charm for WiAV. Rather, as set forth below, history is doomed to repeat itself. Just as before, WiAV's claims fail on the pleadings and must be dismissed.

As with each of WiAV's prior complaints against HTC, WiAV's current claims stem from the Agreement pursuant to which HTC agreed to purchase WiAV's rights in certain wireless technology patents (the "Exclusive Vocoder Patent Rights") for millions of dollars in installment payments which HTC has indisputably made. HTC also agreed to make certain additional payments to WiAV, known as "Conditional Payments," *if*, *and only if*, HTC "grant[ed] a covenant not to sue, release, and/or any rights to or under one or more Exclusive Vocoder Patent Rights . . . to any third party" -- a possibility referred to under the Agreement as a "Triggering Event."

In the original action brought in the New York State Supreme Court (the "State Court Action") WiAV claimed that HTC entered into three agreements with each of IBM, Apple, and

Alcatel Lucent (the "Third-Party Agreements") pursuant to which HTC granted them "rights to or under" the Exclusive Vocoder Patent Rights -- alleged Triggering Events for which WiAV claimed it was owed Conditional Payments.  WiAV also claimed, *solely upon information and belief*, that HTC entered into agreements with any number of "other parties" -- who WiAV refused to identify -- that constituted additional Triggering Events (the "Catch-All Claim").

The trial court in the State Court Action labeled WiAV's claims "broad, general, speculative and conclusory" and dismissed WiAV's claims on the pleadings, *with prejudice*, and awarded HTC its costs.  The trial court concluded that none of the Third-Party Agreements qualified as a Triggering Event because none granted a "covenant not to sue, release, and/or any rights to or under one or more [of the Exclusive Vocoder Patent Rights]."  The trial court further concluded that WiAV's Catch-All Claim failed because WiAV offered no factual details to support it.  The trial court's decision was unanimously affirmed on appeal -- again with an award of costs.

Having failed in its efforts to collect a Conditional Payment based on a legitimate Triggering Event, WiAV next embarked upon an entirely different strategy -- a game of entrapment.  Specifically, WiAV attempted to dupe HTC into entering an agreement with a WiAV affiliate that WiAV hoped to use as the basis to manufacture a Triggering Event claim.  Yet, when HTC failed to take the bait, WiAV cried foul and sued HTC in this Court for an alleged breach of the Agreement.  HTC's motion to dismiss that action remains pending.

The bulk of this action represents more of the same from WiAV -- a repeat performance of claims that were previously dismissed with prejudice in the State Court Action.  Once again, WiAV alleges -- in purely conclusory fashion -- that HTC entered into agreements with third-parties that constitute Triggering Events for which WiAV is owed Conditional Payments.  The Complaint asserts two such claims: (1) "The Microsoft Triggering Event" claim (Count I) (the

"Microsoft Triggering Event Claim"); and (2) the "Additional Triggering Events" claim (Count III) (the "Additional Triggering Events Claim").  Neither claim is viable.

As an initial matter, the Microsoft Triggering Event Claim -- by which WiAV alleges that: (1) Microsoft advised WiAV's affiliate, WH Patent, that it "already had a license for 'a significant portion (if not all)' of the Exclusive Vocoder Patents[;]" and (2) baldly asserts, "the only way that Microsoft could have obtained a license for those rights was through HTC" -- is barred by *res judicata*.  As pled, the claim is nothing more than a subset of the Catch-All Claim that was dismissed *with prejudice* in the State Court Action.

WiAV's Catch-All Claim in the State Court Action broadly alleged that HTC entered into agreements "with other parties" by which it granted "other parties" rights to or under the Exclusive Vocoder Patent Rights.  Thus, the Catch-All Claim already encompassed *any* claim that HTC entered into an agreement to grant rights to or under the Exclusive Vocoder Patent Rights to a third party -- including, but certainly not limited to, Microsoft.  Having litigated and lost -- *with prejudice* -- on its Catch-All Claim in the State Court Action, WiAV cannot relitigate the very same claim here.

Moreover, even assuming -- *arguendo* -- that *res judicata* does not apply, dismissal is still warranted because the Microsoft Triggering Event Claim is wholly conclusory and based entirely on speculation.  WiAV offers no details whatsoever regarding any alleged agreement or grant between HTC and Microsoft -- in fact, according to the Complaint, Microsoft never indicated that it had *any* agreement or discussions with HTC at all.  WiAV simply alleges that Microsoft claimed it has a license for the Exclusive Vocoder Patent Rights and leaps to the unfounded conclusion that Microsoft could only have gotten such a license from HTC.  But that is *not* the case.

Indeed, the Agreement itself makes clear that the Exclusive Vocoder Patents were in

existence and licensable from other sources for years *prior to* the parties' Agreement. Thus, even crediting WiAV's allegation that Microsoft claimed it has a license for the Exclusive Vocoder Patent Rights, Microsoft could have obtained those rights from any number of sources.

WiAV's Additional Triggering Events Claim fails for many of the same reasons as the Microsoft Triggering Event Claim. For starters, the Additional Triggering Events Claim is nearly identical to the Catch-All Claim that was dismissed with prejudice in the State Court Action. Both claims allege that HTC entered into "other agreements of which WiAV has no knowledge" which constitute Triggering Events. The state courts found that this claim was "fatally defective." Accordingly, the Additional Triggering Events Claim is barred by *res judicata*.

The fact that WiAV now alleges -- purely "[o]n information and belief" -- that the alleged "other agreements" include agreements with Apple and Ericsson does not alter this conclusion. WiAV offers no detail whatsoever regarding the alleged Apple and Ericsson agreements, much less any of the alleged "other agreements" referenced as part of the Additional Triggering Events Claim. WiAV does not even allege -- in anything other than purely speculative terms -- that any of the alleged agreements concern the Exclusive Vocoder Patents at all. WiAV's unfounded suspicions offer no basis to maintain a claim for which WiAV alleges no facts in support. Thus, even absent *res judicata*, the Additional Triggering Events Claim fails and must be dismissed.

Although WiAV's remaining claim -- the Chinese Triggering Event claim (Count II) (the "Chinese Triggering Event Claim") -- may be new, it is equally unavailing. The gravamen of the claim is that HTC is liable for a Triggering Event created when it allegedly failed to pay maintenance fees due on one of the Exclusive Vocoder Patents and allowed the patent to expire. Yet, the Agreement specifically defines a Triggering Event as "granting a covenant not to sue, release, and/or any rights to or under one or more Exclusive Vocoder Patent Rights . . . to any

third party." Thus, merely failing to pay maintenance fees on an Exclusive Vocoder Patent or permitting a patent to expire does not suffice.

Finally, although none of WiAV's claims is viable, WiAV's demand for an award "of its costs, including reasonable attorneys' fees" is especially meritless. The law in New York is clear -- a claimant cannot recover attorneys' fees for a breach of contract claim absent language in the contract that provides for such relief with "unmistakable clarity." Here, the Agreement contains no such language and specifically prohibits WiAV (and HTC) from seeking costs.

Accordingly, WiAV's Complaint must be dismissed.

## STATEMENT OF FACTS

The facts of this motion are derived from the Declaration of Jonathan D. Pressment, Esq. (the "Pressment Decl."), and the exhibits attached thereto.[1]

### A.   The Parties.

WiAV is a serial litigant and purportedly a Virginia corporation in the business of acquiring and licensing patents in wireless telecommunications technologies with a principal place of business located in Vienna, Virginia. (Pressment Decl. Ex. A (hereinafter, "Ex. A (Complaint)") ¶¶ 7, 11.) HTC is a cell phone manufacturer based in Taiwan. (*Id.* ¶¶ 8, 12.)

### B.   The Agreement.

In June 2009, WiAV and HTC entered into the Agreement pursuant to which HTC purchased WiAV's exclusive rights in the Exclusive Vocoder Patent Rights in exchange for millions of dollars in installment payments, which HTC has indisputably made. (*Id.* ¶¶ 14-15; Pressment Decl. Ex. B (hereinafter, "Ex. B (Agreement)") § 3(a)(i)-(iii).)

---

[1]   While HTC does not admit the truth of the Complaint's allegations, on a motion to dismiss, all well-pled factual allegations must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

The Agreement further required that HTC make additional payments to WiAV (the "Conditional Payments") *if, and only if*, as is relevant here, "HTC grant[ed] a covenant not to sue, release, and/or any rights to or under one or more [of WiAV's Exclusive Vocoder Patent Rights] to any *third party*" -- a possibility which the Agreement refers to as a "Triggering Event." (Ex. B (Agreement) § 3(b)(i) (emphasis added); Ex. A (Complaint) ¶¶ 3, 18-19.)

Importantly, the Agreement expressly establishes that the Exclusive Vocoder Patents themselves -- as opposed to *WiAV's* rights in the Exclusive Vocoder Patents -- are owned by a non-party, Mindspeed Technologies, Inc. ("Mindspeed"), and were formerly owned by non-party Conexant Systems, Inc. ("Conexant").  (*See* Ex. B (Agreement) at 1.)  Further, the Agreement makes clear that WiAV obtained the Exclusive Vocoder Patent Rights from non-party, Skyworks Solutions, Inc. ("Skyworks"), and that prior to entering the Agreement with HTC, WiAV granted licenses and covenants not to sue under the Exclusive Vocoder Patent Rights to other parties including, but perhaps not limited to, Apple, Inc. ("Apple") and RIM.  (*Id.* § 5(a)(vii).)

Finally, the Agreement: is expressly governed by New York law (*id*. § 6(d)); provides that any claims arising under the Agreement must be brought in New York (*id*.); and contains an express merger and integration provision that, *inter alia*, establishes that the Agreement constitutes the entire agreement between the parties as follows:

> Entire Agreement.  The terms and conditions of this Agreement, including its exhibits, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and merges and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions.

(*Id.* § 6(g).)

## C.    *WiAV's Prior Attempts To Extract Additional Payments From HTC.*

### 1.    *The State Court Action.*

The parties operated under the Agreement for several years without incident.  While

WiAV contends that HTC "has a long history of blatantly breaching the Agreement[,]" the only alleged breach to which WiAV alludes is an alleged Triggering Event for which WiAV concedes it was fully compensated -- absent *any* need for litigation.[2] (*See* Ex. A (Complaint) ¶ 19.)

Nevertheless, in 2013, WiAV filed the State Court Action in the New York State Supreme Court in which WiAV claimed that it was owed Conditional Payments for alleged Triggering Events created by HTC's purported entrance into agreements with third-parties by which HTC allegedly conveyed rights to or under the Exclusive Vocoder Patent Rights.

WiAV's claims in the State Court Action fell into two categories: (1) claims pertaining to the Third-Party Agreements that WiAV identified by specific counter-parties (IBM, Apple and Alcatel Lucent) and precise dates (month, day and year); and (2) the Catch-All Claim by which WiAV broadly alleged -- solely "[u]pon information and belief" -- that "HTC has entered into agreements with other parties that constituted Triggering Events [for] which HTC has failed to notify or pay WiAV." (Pressment Decl. Ex. C (hereinafter, "Ex. C (State Court Complaint)" ¶¶ 12, 15, 18, 23.)

The trial court in the State Court Action dismissed WiAV's claims on the pleadings, with prejudice, and awarded HTC costs.[3] (Pressment Decl. Ex. E (hereinafter, "Ex. E (State Court

---

[2]  WiAV's assertion that its claim in the prior action filed with this Court provides evidence that "HTC has a long history of blatantly breaching the Agreement" (*see* Ex. A (Complaint) ¶ 19) is disingenuous at best.  HTC was granted permission to move for dismissal of the prior action, whereas WiAV's request to move for summary judgment in that action was denied. *See* Order, *WiAV Solutions Inc. et.al. v. HTC Corporation*, 1:18-cv-2595 (PGG), ECF No. 29.  HTC's motion to dismiss the prior action filed with this Court remains pending.  *See WiAV Solutions Inc. et. al. v. HTC Corporation*, 1:18-cv-02595 (PGG), ECF Nos. 37-42, 44.

[3]  WiAV was afforded numerous opportunities to amend its complaint in the State Court Action.  Indeed, at oral argument of HTC's motion to dismiss in the State Court Action, the presiding Judge repeatedly referred to WiAV's complaint as "bare bones" and admonished WiAV for refusing opportunities to amend its claims.  (*See* Pressment Decl. Ex. D (hereinafter "Ex. D (State Court Transcript)" at 28:11-33:18.)

Decision).")  The trial court properly concluded that none of the Third-Party Agreements qualified as Triggering Events because each contained a "carve-out" provision that specifically prevented any grant of rights to or under the Exclusive Vocoder Patent Rights.  (*Id.* at 6.)[4]

The trial court also properly dismissed the Catch-All Claim because it was too "broad, general, speculative, and conclusory" and was merely an improper attempt to "review all the agreements HTC enters into with third parties to determine whether a Triggering Event has occurred." (*Id.* at 13-14.)  Importantly, the state trial court found that -- as is the case here -- "the operative allegations are alleged only 'upon information and belief,' and no facts are alleged in support of such belief . . . WiAV has not produced a copy of the alleged contracts, nor does it allege any factual details substantiating the existence of the alleged contracts . . . ." (*Id.* at 13.)

### 2. *WiAV's Appeal Of The State Trial Court's Decision.*

WiAV appealed the trial court's decision in the State Court Action.  However, the First Department unanimously affirmed the trial court's "thorough decision" and awarded HTC costs -- concluding that the trial court "properly determined that none of the [Third-Party Agreements] entitled plaintiff to additional payments" and that "plaintiff's unsupported [Catch-All Claim] of the existence of other Triggering Events failed to state a claim and that further discovery was not warranted." *See WiAV Solutions Inc. v. HTC Corp.*, 148 A.D.3d 587, 587 (1st Dep't 2017).

### 3. *The First Federal Action.*

Despite the outcome of the State Court Action, WiAV has persisted in its efforts to obtain additional payments from HTC under the Agreement.  In March 2018, WiAV filed yet another breach of contract action against HTC -- this time, with *this* Court (the "First Federal Action") -- in which WiAV claimed that HTC violated a separate provision of the Agreement pertaining to

---

[4]    The pincites for Exhibit E are to the page numbers appearing at the bottom of its pages.

HTC's attempts to return the Exclusive Vocoder Patent Rights to a WiAV affiliate, WH Patent Holdings.  *See WiAV Solutions Inc. et al. v. HTC Corporation*, 1:18-cv-2595 (PGG).

By Order dated November 16, 2018, the Court permitted HTC to move for dismissal of the First Federal Action and *denied* WiAV's request for permission to cross-move for summary judgment.  *See WiAV Solutions Inc. et al. v. HTC Corporation*; 1:18-CV-2595 (PGG), ECF No. 29.  HTC's motion was submitted on February 6, 2019 and remains pending.

**D.      *This Action.***

WiAV commenced this action (the "Action") by filing the Complaint with this Court on May 29, 2019.  The Complaint asserts three causes of action:

(1)      the Microsoft Triggering Event Claim (Count I), by which WiAV alleges that *(a)* Microsoft advised WiAV's affiliate, WH Patent, that Microsoft has a license for a portion (or all) of the Exclusive Vocoder Patent Rights, and *(b)* baldly asserts, "[o]f course, the only way that Microsoft could have obtained a license for those rights was through HTC" (Ex. A (Complaint) ¶¶ 21-23);

(2)      the Chinese Triggering Event Claim (Count II), by which WiAV alleges that HTC created a Triggering Event by allegedly failing to pay maintenance fees on one of the Exclusive Vocoder Patents and permitting it to expire (*id*. ¶¶ 24-27); and

(3)      the Additional Triggering Events Claim (Count III), by which WiAV alleges -- "[o]n information and belief" and absent virtually any detail -- that HTC "hid additional Triggering Events" from WiAV for which WiAV claims it is owed Conditional Payments (*id*. ¶¶ 48-50).

None of these claims is remotely viable.

Against this backdrop, HTC moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**ARGUMENT**

**I.**

**STANDARDS APPLICABLE TO THE INSTANT MOTION**

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must

allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[5]  A plaintiff must demonstrate grounds for relief beyond mere "labels and conclusions." *Id.* at 555.

A complaint must also set forth "[f]actual allegations [that are] . . . enough to raise a right to relief above the speculative level." *Id.*  "Though the Court must accept the factual allegations of a complaint as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 806 (S.D.N.Y. 2012) (quoting *Iqbal*, 556 U.S. at 678).

"In considering whether a complaint states a claim upon which relief can be granted, the court 'begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth,' and then determines whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" *BankUnited, N.A. v. Merritt Envtl. Consulting Grp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

On a Rule 12(b)(6) motion to dismiss, beyond the complaint itself, the court may also consider documents attached to the complaint or incorporated by reference. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  A court may also consider "documents that the plaintiff relied

---

[5]   "*Res judicata* challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. Cty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).

on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of and relied on when bringing suit." *Swan Media Grp.*, 841 F. Supp. 2d at 806; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

As set forth below, each of WiAV's claims must be dismissed.  To begin, WiAV's Microsoft Triggering Event and Additional Triggering Events Claims must be dismissed because they merely attempt to dress-up claims that were already dismissed with prejudice in the State Court Action and are barred by *res judicata*.  Further, WiAV's allegations in support of these claims are wholly conclusory and based entirely on speculation.  Thus, the claims fail to satisfy basic federal pleading requirements.  Finally, WiAV's Chinese Triggering Event Claim fails for a very simple reason -- it is belied by the clear and unambiguous language of the Agreement.

Accordingly, the Complaint must be dismissed pursuant to Federal Rule 12(b)(6).

## II.

## THE MICROSOFT TRIGGERING EVENT CLAIM (COUNT I) MUST BE DISMISSED

### A.    The Microsoft Triggering Event Claim Is Barred By *Res Judicata.*

As an initial matter, the Microsoft Triggering Event Claim (Count I) is barred by *res judicata*.  "Under both New York law and federal law, the doctrine of *res judicata*, or claim preclusion, provides that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.'"  *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (emphasis added); *see also Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000).

It is well-settled that an order granting a motion to dismiss for failure to state a claim *with prejudice* -- such as the order of dismissal issued in the State Court Action -- *is* an adjudication on the merits and *will* have *res judicata* effect.  *See Aard-Vark Agency, Ltd. v. Prager*, 8 A.D.3d 508,

509 (2d Dep't 2004);[6] *see also Yonkers Const. Co. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375, 380 (1999).  Here, WiAV's Microsoft Triggering Event Claim is precluded by virtue of the state courts' dismissal -- *with prejudice* -- of WiAV's Catch-All Claim in the State Court Action.

WiAV's Catch-All Claim in the State Court Action asserted that HTC entered into agreements with "other parties" by which HTC granted "other parties" rights to or under the Exclusive Vocoder Patent Rights.  (*See* Ex. C (State Court Complaint) ¶ 23.)  As such, the Catch-All Claim was so broadly worded that it already encompassed any claim that HTC entered into an agreement with *any* "other parties" to grant rights to or under the Exclusive Vocoder Patent Rights -- including, but certainly not limited to, Microsoft.  Thus, WiAV's Microsoft Triggering Event Claim is barred by *res judicata*.

The mere fact that WiAV now claims that Microsoft is one of the alleged "other parties" to whom HTC allegedly granted rights to or under the Exclusive Vocoder Patent Rights -- whereas it refused to identify any "other parties" in support of its Catch-All Claim in the State Court Action -- does not alter this conclusion.  Putting aside the fact that WiAV fails to offer *any* factual allegations to support the finding of an agreement -- *of any sort* -- between HTC and Microsoft (*see* Section II(B), below), WiAV cannot relitigate its Catch-All Claim merely by providing additional detail that it refused to provide in the prior litigation.  *See Chira v. Lockheed Aircraft Corp.*, 520 F. Supp. 1390, 1391 (S.D.N.Y. 1981) (*res judicata* applies "not only to all matters pleaded, but to all that might have been, and not only as to all matters litigated and decided . . . but as to all relevant issues which could have been but were not raised and litigated in the suit.") (*quoting Teltronics Servs., Inc. v. L M Ericsson Telecomm., Inc.*, 642 F.2d 31 (2d

---

[6]   A federal court must accord the same preclusive effect to a state court decision that a state court would give it.  *Falardo v. New York City Police Dept.*, 566 F. Supp. 2d 283, 285 (S.D.N.Y. 2008).

Cir. 1981)); *see also Penades v. Republic of Ecuador*, No. 18 Civ. 4493 (AT) (RWL), 2019 WL

3751401, at *5 (S.D.N.Y. Aug. 8, 2019) (same).

 On this point, the decision in *Penades v. Republic of Ecuador* is instructive.  In *Penades*,

the plaintiff's prior complaint for recovery under certain bonds and indentures was dismissed for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  2019 WL 3751401,

at *4.  In his subsequent complaint, the plaintiff again sought recovery under those same bonds,

as well as other bonds that were not the basis for plaintiff's prior claim.  *Id.* at *3.  Although the

subsequent complaint contained additional factual allegations and legal theories, the Court

dismissed it on grounds of *res judicata*.  *Id.* at *5-7.  In dismissing the subsequent complaint, the

Court explained that *res judicata* "not only bars parties from relitigating the same cause of

action, but also prevents litigation of a matter that could have been raised and decided in a

previous suit, whether or not it was raised."  *Id.* at *5.

 Here, WiAV's calculated decision to broadly allege its Catch-All Claim in the State

Court Action -- in purely speculative terms and absent any semblance of detail -- does not permit

it to have "another bite at the apple" in this action.  Once the State Court dismissed the Catch-All

Claim *with prejudice* as "broad, general, speculative, and conclusory," (*see* Ex. E (State Court

Decision) at 13), WiAV was thereafter precluded from reasserting a claim that HTC created

"additional" Triggering Events by entering agreements with any "other party" -- no matter how

detailed -- including Microsoft.[7]  *See Aard-Vark Agency, Ltd.*, 8 A.D.3d at 509; *Yonkers Const.

Co.*, 93 N.Y.2d at 380.

---

[7] Although *res judicata* does not typically preclude parties from filing a subsequent complaint
 where the claims arise after the filing of the initial complaint, WiAV fails to allege when it
 believes Microsoft obtained the alleged license upon which WiAV's claim is based.  Thus,
 even putting aside the numerous deficiencies that are otherwise fatal to the Microsoft
 Triggering Event Claim, WiAV fails to allege sufficient facts to demonstrate that its claim

Accordingly, WiAV's Microsoft Triggering Event Claim must be dismissed.

**B.    The Complaint Fails To Set Forth Sufficient Allegations To Support The Microsoft Triggering Event Claim.**

Even assuming-- *arguendo*-- that the Microsoft Triggering Event Claim is not barred by *res judicata* -- and, respectfully, it *is* -- the claim must also be dismissed because it fails to adequately set forth a viable claim for relief.  As pled, the Microsoft Triggering Event Claim rests on nothing more than a single conclusory and wholly speculative allegation.

The gravamen of the Microsoft Triggering Event Claim is that HTC licensed rights to or under the Exclusive Vocoder Patent Rights to Microsoft, and then failed to notify or compensate WiAV accordingly.  But WiAV fails to allege any *facts* to support this claim.  The entire claim is founded on a *single* paragraph -- *three* sentences -- from WiAV's Complaint, as follows:

> 22.    In July 2018, WH Patent held a telephone conference with Microsoft. During that conference, and in a follow up email, Microsoft representatives told WH Patent that Microsoft already had a license for 'a significant portion (if not all)' of the Exclusive Vocoder Patent Rights that WH Patent had referenced in its letters.  Of course, the only way that Microsoft could have obtained a license for those rights was through HTC and under the terms of the Agreement, which necessarily gave rise to a Triggering Event (the 'Microsoft Triggering Event').

(Ex. A (Complaint) ¶ 22 ("Paragraph 22").)

On its face, Paragraph 22 is more notable for what it *fails* to allege than what it actually alleges.  WiAV does *not* allege -- at *any* point in the Complaint -- that Microsoft ever advised WiAV (or its affiliate, WH Patent) that it licensed any of the Exclusive Vocoder Patent Rights *from HTC*.  In fact, according to the Complaint, Microsoft never advised WiAV's affiliate that it entered into any agreement(s) with, or obtained any grant of rights from, HTC whatsoever.  Nor

---

arose after the State Court Action or, given that the Agreement is now more than 10 years old, that its claim is even timely.  Moreover, WiAV cannot shield its claim from dismissal by arguing that it did not previously know about any alleged license obtained by Microsoft.  *See Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir. 1991) ("[N]ewly discovered evidence does not preclude the application of *res judicata*.").

does WiAV allege -- in any detail -- that there ever *was* any such agreement between HTC and Microsoft.  Indeed, based on the Complaint, it does not appear that Microsoft ever mentioned HTC to WiAV (or its affiliate) at all.  (*See* Ex. A (Complaint) ¶ 22.)

Instead, WiAV merely alleges that Microsoft advised WiAV's affiliate that Microsoft previously licensed some (or all) of the Exclusive Vocoder Patents.  Based on that -- *and that alone* -- WiAV jumps to the conclusion that, "the only way that Microsoft could have obtained a license for those rights was through HTC . . . ."  (*Id.*)  But that allegation fails on multiple levels.  To begin, as pled, the allegation is entirely speculative.  It is well-settled that speculative or conclusory allegations are *not* "entitled to the assumption of truth" on a motion to dismiss.  *See BankUnited, N.A.*, 360 F. Supp. 3d at 183; *Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).  Nor may WiAV maintain claims premised entirely on the mere suspicion of wrongdoing.  *See Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 322 (S.D.N.Y. 2016).

Moreover, WiAV's allegation is not even factually accurate.  Indeed, the Agreement expressly establishes that: (1) the Exclusive Vocoder Patents were previously owned and licensable by non-parties, Mindspeed and Conexant (*see* Ex. B (Agreement) at 1); (2) the Exclusive Vocoder Patent Rights themselves were previously owned and licensable by Skyworks (*see id.* § 5(a)(vii)); and (3) perhaps most importantly, that WiAV itself licensed the Exclusive Vocoder Patent Rights to other entities -- including, but not necessarily limited to, Apple and RIM -- prior to entering into the Agreement with HTC (*id.*).[8]

Thus, even crediting WiAV's claim that Microsoft indicated it had obtained a license for the Exclusive Vocoder Patent Rights, WiAV's related assertion that "the only way Microsoft

---

[8]   Because the Agreement was attached to the Complaint and is repeatedly referenced in WiAV's allegations, consideration of the Agreement on a Rule 12(b)(6) motion to dismiss is entirely proper.  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Swan Media Grp.*, 841 F. Supp. 2d at 806; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

could have obtained a license for those rights was through HTC" rings hollow -- *the Agreement* itself makes clear that Microsoft could have obtained those rights (*assuming* it ever did) from any number of sources.  It is well-settled that allegations that directly conflict with documentary evidence are entitled to no credit whatsoever.  *See Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008); *see also Ottah v. BMW*, 230 F. Supp. 3d 192, 196 (S.D.N.Y. 2017); *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559 (LTS) (JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true.").

Accordingly, the Microsoft Triggering Event Claim must be dismissed.

## III.

## THE ADDITIONAL TRIGGERING EVENTS CLAIM (COUNT III) MUST BE DISMISSED

### A.    The Additional Triggering Events Claim Is Barred By *Res Judicata*.

Like the Microsoft Triggering Event Claim, the Additional Triggering Events Claim (Count III) is also barred by *res judicata* based on the dismissal, with prejudice, of the Catch-All Claim in the State Court Action.  WiAV's Additional Triggering Events Claim alleges that, "[g]iven HTC's long history of blatantly breaching the Agreement, it is only reasonable to believe that HTC hid additional Triggering Events arising from . . . other agreements of which WiAV has no knowledge."  (Ex. A (Complaint) ¶ 50.)  But this allegation is nearly identical to the allegations offered in support of WiAV's Catch-All Claim in the State Court Action.

WiAV's Catch-All Claim in the State Court Action was based on allegations that, "HTC has entered into agreements with other parties that constituted Triggering Events regarding which HTC has failed to notify or pay WiAV" and "additional Triggering Events have occurred of which WiAV does not currently have knowledge."  (*See* Ex. C (State Court Complaint) ¶¶ 23,

26.)  Thus, the state court's dismissal -- with prejudice -- of WiAV's Catch-All Claim in the

State Court Action also precludes WiAV's assertion of the Additional Triggering Events Claim

here. *See Aard-Vark Agency, Ltd.*, 8 A.D.3d at 509; *Yonkers Const. Co.*, 93 N.Y.2d at 380.

The fact that WiAV now alleges -- solely "[o]n information and belief" -- that HTC

entered into patent license agreements with Ericsson and Apple that constitute Triggering

Events, does not alter this conclusion.  Putting aside the fact that WiAV offers virtually no

factual allegations to support these claims (*see* Section III(B), below), WiAV's Catch-All Claim

in the State Court Action already asserted that HTC entered into agreements with "other parties"

by which it granted "other parties" rights to or under the Exclusive Vocoder Patent Rights.  (*See*

Ex. C (State Court Complaint) ¶ 23.)  Thus, the Catch-All Claim already encompassed *any* claim

that HTC entered into agreements with "other parties" to grant rights to or under the Exclusive

Vocoder Patent Rights -- including, but certainly not limited to, Apple and Ericsson.

Finally, *res judicata* is especially applicable to WiAV's attempt to re-assert a claim with

respect to an alleged agreement between HTC and Apple since WiAV already asserted such a

claim in the State Court Action.  The state court dismissed the claim because it found that HTC's

agreement with Apple -- which, in contrast to its claim here, WiAV did *not* allege solely "[o]n

information and belief" and specifically identified by date -- "excludes the WiAV Patent rights

from its scope." (Ex. E (State Court Decision) at 10.)  The state trial court also noted that the

parties' Agreement expressly establishes that *WiAV* already granted Apple a license under the

Exclusive Vocoder Patent Rights in 2008 -- a year *prior to* the parties' execution of the

Agreement.  (*Id.* at 12 n.7.)

Accordingly, the Additional Triggering Events Claim is also barred by *res judicata*.

**B.      The Complaint Fails To Set Forth Sufficient Allegations To Support The
         Additional Triggering Events Claim.**

Even assuming -- *arguendo*-- that the Additional Triggering Events Claim is not barred

by *res judicata*, much like the Microsoft Triggering Events Claim, the claim must also be

dismissed because it fails to comply with basic federal pleading requirements.

The Additional Triggering Events Claim rests on a total of three conclusory and utterly

speculative allegations -- Paragraphs 48-50 of the Complaint -- as follows:

> 48.    On information and belief, in or about 2014, HTC entered into a patent license
>        agreement with Telefonaktiebolaget LM Ericsson (the 'Ericsson License
>        Agreement').
>
> 49.    On information and belief, in or about 2015, HTC entered into a patent license
>        agreement with Apple Inc. (the 'Apple License Agreement').
>
> 50.    Given HTC's long history of blatantly breaching the Agreement, it is only
>        reasonable to believe that HTC hid additional Triggering Events arising from the
>        Ericsson and Apple License Agreements as well as other agreements of which
>        WiAV has no knowledge.

(*See* Ex. A (Complaint) ¶¶ 48-50.)[9]

As an initial matter, WiAV's allegations as to the existence of the alleged Ericsson and

Apple License Agreements are patently insufficient to survive a motion to dismiss.  It is well-

settled that allegations made solely on information and belief lack the requisite factual basis to

survive a motion to dismiss.  *See Schorr v. Dopico*, 205 F. Supp. 3d 359, 363 (S.D.N.Y. 2016)

("[W]hile a plaintiff may plead facts alleged upon information and belief where the belief is

based on factual information that makes the inference of culpability plausible, such allegations

must be accompanied by a statement of the facts upon which the belief is founded.") (collecting

cases) (quotation omitted); *see also Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 237-38

---

[9]   The Additional Triggering Events Claim also references the Microsoft Triggering Event and
      Chinese Triggering Event Claims, but merely asserts, in conclusory fashion, that each "is a
      Triggering Event."  (*See id.* ¶¶ 46-47.)

(S.D.N.Y. 2019) (same).  Thus, pleading on "information and belief" does not relieve a plaintiff of its obligation to plead the facts upon which its belief is founded.  *Id.*

Here, WiAV does not allege *any* "information" -- much less, any *facts* -- upon which its purported "belief" that HTC entered into agreements with Ericsson and Apple (or any "other agreements" for that matter) is founded.  Moreover, even if WiAV offered any factual allegations in support of its "belief" -- which it does not -- WiAV does not allege that either of the alleged agreements had anything to do with the Exclusive Vocoder Patent Rights.  Instead, WiAV simply alleges, "[o]n information and belief," that HTC entered into agreements with Apple and Ericsson -- "in or about" years that preceded dismissal of the State Court Action -- and asserts, *ipse dixit*, "it is only reasonable to believe that HTC hid additional Triggering Events arising from the Ericsson and Apple License Agreements as well as other agreements of which WiAV has no knowledge."  (Ex. A (Complaint) ¶ 50.)  WiAV's allegations are so speculative and conclusory that they should be rejected out of hand.

Indeed, WiAV's claim with respect to HTC's alleged agreement with Apple in the State Court Action further underscores the deficiencies of its pleading here.  In the State Court Action WiAV did *not* allege the existence of an agreement between HTC and Apple solely "on information and belief."  Rather, unlike here, WiAV affirmatively alleged that HTC had an agreement with Apple and specified the precise date of the agreement.  (Ex. C (State Court Complaint) ¶ 18).  The claim was nonetheless dismissed because WiAV's claims were belied by the terms of the agreement that WiAV identified.  (*See* Ex. E (State Court Decision) at 10-12.)

Here, WiAV's claim with respect to an alleged agreement between HTC and Apple is even less viable because, among other things, it is alleged solely "[o]n information and belief" and lacks virtually any detail.  In fact, on the face of the pleading, WiAV is not even sure that an

agreement between HTC and Apple exists.  Nor does WiAV allege a *single* fact to suggest that one does.  The same is true for WiAV's allegation regarding the alleged Ericsson agreement.

Accordingly, WiAV's Additional Triggering Events Claim fails to satisfy the most basic of federal pleading requirements and must be dismissed.

**IV.**

**THE CHINESE TRIGGERING EVENT CLAIM (COUNT II) MUST BE DISMISSED**

Finally, WiAV's Chinese Triggering Event Claim (Count II) also fails.  The gravamen of the claim is that HTC failed to pay maintenance fees due on one of the Exclusive Vocoder Patents (the "Chinese Patent"), which led the patent to expire.  (*See* Ex. A (Complaint) ¶¶ 24-25.)  WiAV contends that this, alone, constitutes a Triggering Event for which it is owed a Conditional Payment.  Yet, WiAV's argument is belied by the plain language of the Agreement.

It is well-settled that, a contract which is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.  *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011).  WiAV has never alleged -- and does not allege here -- that the Agreement is at all ambiguous, unclear or incomplete.  Rather, WiAV affirmatively alleges that the Agreement is set forth in "clear and unambiguous language[.]" (*See* Ex. A (Complaint) ¶ 1.)  Accordingly, the Agreement must be enforced according to the "plain meaning of its terms."  *See Lockheed Martin Corp.*, 639 F.3d at 69.

Here, the Agreement specifically defines a Triggering Event as "HTC *granting* a covenant not to sue, release, and/or any rights to or under the Exclusive Vocoder Patent Rights in the Wireless Handset field of use to any third party."  (Ex. B (Agreement) at 12 (emphasis added).)  The plain meaning of the term "granting" connotes an affirmative act -- in this case, "HTC granting a covenant not to sue, release, and/or any rights to or under the Exclusive Vocoder Patent Rights."  (*Id.*)

No doubt mindful of the Agreement's dispositive language, WiAV resorts to arguing -- *in vain* -- that passively permitting a patent to expire "counts as a 'covenant not to sue' and, thus, a Triggering Event for which HTC owes WiAV compensation." (*See* Ex. A (Complaint) ¶¶ 24-25.) But WiAV offers absolutely no basis -- in the Agreement or otherwise -- to support this claim. As written, the Agreement makes clear that a Triggering Event requires an affirmative act -- passively permitting a patent to expire does not suffice.[10]

On this point, the trial court's decision in the State Court Action is, once again, dispositive. In the State Court Action, the trial court specifically found that a "'Triggering Event' is defined as HTC's *affirmative grant* of 'a covenant not to sue, release, and/or any rights to or under one or more Exclusive Vocoder Patent Rights in the Wireless handset field of use to any third party." (*See* Ex. E (State Court Decision) at 3 (*quoting* Ex. B (Agreement) § 3(b)(i)(A)) (emphasis added).) The trial court's reading is determinative of the issue in this case. *See Klein v. City of New York*, No. 10 Civ. 9568 (PAE) (JLC), 2011 WL 5248169, at *6 (S.D.N.Y. Oct. 28, 2011) (applying New York law, explaining that issue preclusion applies where "identical issue was raised in the prior action and is dispositive of the present action").

---

[10] In fact, WiAV's claim is directly at odds with the Complaint's more specific allegations which explain that, "WiAV transferred the Exclusive Vocoder Patent Rights to HTC with the expectation that HTC would *create* value with those rights, value in which WiAV was expressly entitled to share." (Ex. A (Complaint) ¶ 16) (emphasis added).) Specifically, the Agreement "was made with the express understanding that HTC, in turn, would seek to license those Patent Rights to third parties[.]" (*Id.* ¶2.) "If HTC successfully granted a covenant not to sue (or license), release and/or any rights to or under any of the Exclusive Vocoder Patent rights to any third party, or obtained an award of damages from enforcement of any of those Exclusive Vocoder Patent Rights (collectively defined in the Agreement as a 'Triggering Event'), the Agreement called for HTC to make additional payments to WiAV . . . ." (*Id.* ¶ 3.) Taken together, these allegations make clear that a Triggering Event only occurs upon HTC's affirmative grant of rights, a license, or a covenant not to sue to a third-party. It is well-settled that allegations that are contradicted by more specific allegations of a Complaint need not be credited. *See, e.g., DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151-52 (2d Cir. 2014).

At bottom, what WiAV's Chinese Triggering Event Claim really asks this Court to do is *not* enforce the Agreement as written, but revise the Agreement to include an additional term to which HTC never agreed.  WiAV cannot do so.  *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) ("Under New York law . . . a court must enforce [a contract's] plain meaning, 'rather than rewrite an unambiguous agreement.'") (quoting *American Express Bank Ltd. v. Uniroyal*, 164 A.D.2d 275, 277 (1st Dep't 1990)).  Thus, WiAV's claim that the alleged expiration of the Chinese Patent constitutes a Triggering Event fails.

WiAV's fallback argument -- that it is entitled to damages for HTC's alleged failure to maintain the Chinese Patent regardless of whether such failure constitutes a Triggering Event (*see* Ex. A (Complaint) ¶ 27) -- is equally unavailing.  WiAV fails to identify *any* language in the Agreement that required HTC to maintain any of the Exclusive Vocoder Patents at all.  The lone provision of the Agreement to which WiAV points in support of this argument is Section 2(d)(ii). (*Id.* ¶ 35.)  But Section 2(d)(ii) does not require HTC to pay maintenance fees on the Exclusive Vocoder Patents.  (*See* Ex. B (Agreement) § 2(d)(ii).)  In fact, Section 2(d)(ii) does not refer to maintenance fees at all.  (*See id.*)

As written, Section 2(d)(ii) of the Agreement merely provides as follows:

(d)    HTC agrees to be bound by the terms and conditions of any and all obligations which are necessary to make [WiAV's assignment of the Exclusive Vocoder Patent Rights] effective, including to be in compliance with the *assignment* provisions of the following agreements:

\*                              \*                              \*

(ii)    Section 2(a)(ii) of the Skyworks-WiAV Agreement;

(*Id.*) (emphasis added.)

Thus, Section 2(d)(ii) pertains only to obligations necessary to render WiAV's assignment of the Exclusive Vocoder Patent Rights to HTC effective.  It makes no reference to --

and certainly does not impose -- an affirmative obligation on HTC to thereafter maintain the underlying patents to which the Exclusive Vocoder Patent Rights pertain.  Moreover, WiAV fails to explain how Section 2(a)(ii) of the *Skyworks*-WiAV Agreement -- the contractual provision to which Section 2(d)(ii) of the Agreement refers -- requires WiAV (or HTC) to maintain any of the Exclusive Vocoder Patents.  In fact, WiAV fails to identify -- or even mention -- the alleged obligation(s) set forth by Section 2(a)(ii) of the Skyworks-WiAV Agreement at all.

It is black-letter law that, to maintain a breach of contract claim, a claimant must identify the specific provision of the agreement that it contends were breached *and* explain the manner in which it contends the provision was breached.  *See, e.g., Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001) (citing *Levy v. Bessamer Tr. Co., N.A.*, No. 97-cv-1785 (JFK), 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997)); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, 13-cv-6551 (TPG), 2014 WL 4058321, at *6 (S.D.N.Y. Aug. 15, 2014) (quoting *Ellington Credit Fund, Ltd. V. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011)).  WiAV has not -- and cannot -- do either here.

Accordingly, WiAV's Chinese Triggering Event fails to sufficiently set forth a viable claim for relief and must be dismissed.

## V.

## IN ANY EVENT, WIAV IS NOT ENTITLED TO COSTS OR ATTORNEYS' FEES

Although none of WiAV's claims is viable, WiAV's demand for the costs of prosecuting this action "including reasonable attorneys' fees" is especially baseless and merely serves to confirm the speciousness of WiAV's claims in this Action.  (*See* Ex. A (Complaint) at 10.)  Under New York law, demands for attorneys' fees are precluded in breach of contract actions absent contractual language making it "unmistakably clear" that such fees are recoverable.  *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492 (1989) (emphasis added).

23

Here, the Agreement lacks any such language.  Thus, even if WiAV's claims were sustainable --

and none are -- there is absolutely no basis for WiAV to seek "reasonable attorneys' fees[.]"  *Id.*;

*see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003).

Further, on the face of the Agreement, the parties also agreed to waive any rights to

indirect, special, *consequential*, punitive and *incidental damages* as follows:

> <u>Limitation on Damages</u>.  NEITHER PARTY SHALL BE LIABLE
> TO THE OTHER FOR LOSS OF PROFITS OR ANY OTHER
> INDIRECT OR SPECIAL, CONSEQUENTIAL, PUNITIVE OR
> INCIDENTAL DAMAGES, HOWEVER CAUSED, EVEN IF
> ADVISED OF THE POSSIBILITY OF SUCH DAMAGE . . .
> THESE LIMITATIONS ON POTENTIAL LIABILITIES WERE
> AN ESSENTIAL ELEMENT IN SETTING CONSIDERATION
> UNDER THIS AGREEMENT . . . .

(Ex. B (Agreement) ¶ 6(a).)  Thus, the Agreement prohibits Plaintiff from seeking costs or any

other "consequential," "indirect," or "incidental damages."  *See In re Lehman Brothers Holdings

Inc.*, No. 16-cv-487 (CM), 2016 WL 7377272, at *3 (S.D.N.Y. Dec. 13, 2016) (recovery of

consequential or indirect damages precluded by damages waiver in agreement).

Accordingly, WiAV's demand for attorneys' fees and costs only further demonstrates the

failings of WiAV's claims.

## **CONCLUSION**

For the foregoing reasons, HTC's Motion should be granted and the Complaint should be dismissed with prejudice, together with such other and further relief as the Court may deem just and proper.

Dated:    November 19, 2019
          New York, New York

Respectfully submitted,

HAYNES AND BOONE, LLP

By: _____

Jonathan D. Pressment
Alexandra Larkin
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(212) 918-8961
jonathan.pressment@haynesboone.com
alexandra.larkin@haynesboone.com

*Attorneys for Defendant HTC Corporation*