UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WIAV SOLUTIONS INC.,

                        Plaintiff,

            - against -

HTC CORPORATION,

                        Defendant.

**ORDER**

19 Civ. 4978 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

            In this diversity action, Plaintiff WiAV Solutions Inc. claims that Defendant HTC

Corporation breached a contract in which WiAV provided certain patent rights to HTC (the

"Contract").  In the Contract, HTC agrees to make additional payments to WiAV ("Conditional

Payments") in the event that HTC licenses the patent rights to a third party.  (Cmplt. (Dkt. No. 1)

¶ 3)  The Contract further provides that if HTC does not make three Conditional Payments to

WiAV by June 1, 2015, HTC must transfer the patent rights to an entity designated by WiAV's

president.  (Id. ¶ 4)

            WiAV alleges that HTC licensed the patent rights to multiple third parties –

including Microsoft Corporation, Apple Inc., and Telefonaktiebolaget LM Ericsson – without

making the contractually required Conditional Payments to WiAV.  (Id. ¶¶ 22-23, 48-50)  WiAV

seeks damages in the amount of the unpaid Conditional Payments.  (Id. at 10-11)[1]

            WiAV also seeks relief concerning a specific Chinese patent.  (Id. ¶¶ 25, 36-39)

WiAV contends that HTC allowed the patent to expire by failing to pay maintenance fees.

(Cmplt. (Dkt. No. 1) ¶¶ 24, 27, 35)  As a result of HTC's mishandling of the Chinese patent, the

_____

[1]  Citations to page numbers refer to the pagination generated by this District's Electronic Case
Files ("ECF") system.

underlying technology was effectively licensed to anyone doing business in China.  (Id. ¶ 24)

WiAV argues that, as a result, HTC owes it a Conditional Payment.  (Id. ¶¶ 24, 26; Pltf. Opp.

(Dkt. No. 24) at 24)  WiAV also claims that HTC breached the Contract by failing to pay

maintenance fees associated with the Chinese patent.  (Cmplt. (Dkt. No. 1) ¶¶ 27, 35-37)

HTC has moved to dismiss under Fed. R. Civ. P. 12(b)(6).  (Def. Br. (Dkt. No.

23))  HTC contends, inter alia, that claims arising from its alleged transfer of patent rights to

Microsoft, Apple, and Ericsson are barred by res judicata, given that a New York state court

dismissed similar claims in 2016.  (Id. at 17-29)

For the reasons stated below, HTC's motion will be granted as to WiAV's claim

that HTC owes it a Conditional Payment as a result of HTC allowing the Chinese patent to

expire.  HTC's motion will otherwise be denied.

## BACKGROUND

I.   FACTS

### A.   The Parties, the Contract, and HTC's Installment Payment Obligation

Plaintiff WiAV is a Virginia-based corporation that acquires and licenses patent

rights in the area of wireless telecommunication technology.  (Cmplt. (Dkt. No. 1) ¶¶ 7, 11)

Defendant HTC is a Taiwanese manufacturer and developer of hardware and software for

smartphones and other wireless technologies.  (Id. ¶¶ 8, 12)

In June 2009, WiAV and HTC executed the Contract, in which HTC agrees to

purchase from WiAV certain voice-coding patent rights (the "Exclusive Vocoder Patent

Rights").  (Id. ¶¶ 1-2, 14)  HTC agrees to pay WiAV a total of $5 million in three installments

between July 2009 and July 2011.  (Id. ¶ 15)  It is undisputed that HTC made the three

installment payments.  (Id. ¶¶ 15-16; see Def. Br. (Dkt. No. 23) at 7)

**B.    HTC's Maintenance Payment and Conditional
<u>Payment Obligations Under the Contract</u>**

In Section 2 of the Contract, WiAV assigns its Exclusive Vocoder Patent Rights

to HTC:

> WIAV does hereby sell, assign, transfer and set over to HTC . . . the entirety of
> WIAV's right, title, and interest in the Exclusive Vocoder Patents . . . to be held
> and enjoyed by HTC for its own use and enjoyment, and for the use and
> enjoyment of its successors, assigns or other legal representatives . . . fully and
> entirely as the same would have been held and enjoyed by WiAV, if this
> assignment and sale had not been made. . . .

(Contract (Dkt. No. 1-1) § 2(a))  In Section 2(d) of the Contract, HTC "agrees to be bound by the

terms and conditions of any and all obligations which are necessary to make such assignment

effective, including to be in compliance with the assignment provisions of . . . Section 2(a)(ii) of

the Skyworks-WIAV Agreement."[2]  (<u>Id.</u> § 2(d)(ii))  Section 2(a)(ii) of the Skyworks-WIAV

Agreement references Sections 4(a) of the same Agreement, which provides that WiAV "shall

pay one-half (1/2) of the maint[e]nance fees" associated with the patents.[3]  (Skyworks-WIAV

Agreement (Dkt. No. 29) §§ 2(a)(ii), 4(a))

In addition to the installment payments and the maintenance fees, HTC agrees in

Section 3(b) of the Contract to make certain payments to WiAV upon the occurrence of a

"Triggering Event."  (Contract (Dkt. No. 1-1) § 3(b)(iv))  As relevant here, a Triggering Event

occurs under the Contract whenever HTC "grant[s] a covenant not to sue, release, and/or any

---

[2]  WiAV acquired the Exclusive Vocoder Patent Rights from Skyworks Solutions, Inc.  (Contract
(Dkt. No. 1-1) § 5(a)(vii))  The Skyworks-WiAV Agreement is attached to the Contract as
Exhibit E2.  (Contract (Dkt. No. 1-1) § 1(l))
[3]  Under the Skyworks-WIAV Agreement, WiAV is responsible for paying maintenance fees to
non-party Mindspeed Technologies, Inc. – a prior owner of the Exclusive Vocoder Patent Rights.
(Skyworks-WIAV Agreement (Dkt. No. 29) at page 1 and § 4(a))  Although WiAV alleges that
payment of the maintenance fees was necessary for the Chinese patent to remain valid (Cmplt.
(Dkt. No. 1-1) ¶ 24), the record does not provide additional information concerning the nature
and purpose of the maintenance fees.

rights to or under one or more Exclusive Vocoder Patent Rights . . . to any third party."  (Id. § 3(b)(i)(A)).  Upon the occurrence of a Triggering Event, HTC must notify WiAV within 10 days of the Triggering Event and issue a "Conditional Payment" to WiAV.  (Id. § 3(b)(iv)(A)-(E))  The Conditional Payments are $4 million each for the first and second Triggering Events, $3 million for the third Triggering Event, and $3.5 million each for the fourth and fifth Triggering Events.  (Id.)  After HTC makes five Conditional Payments to WiAV, the Contract provides that Section 3(b) will become void, and HTC will owe WiAV no more Conditional Payments.  (Id. § 3(b)(iv)(E))

As discussed above, if fewer than three Triggering Events occur before June 1, 2015, HTC is obligated under Section 6(e)(i) of the Contract to assign the Exclusive Vocoder Patent Rights to any entity identified by WiAV's president.  (Id. § 6(e)(i); Cmplt. (Dkt. No. 1) ¶ 4)

C.    **First Triggering Event**

At some point before May 6, 2013, WiAV "suspected that a Triggering Event might have occurred" and "raised the issue with HTC."[4]  (Cmplt. (Dkt. No. 1) ¶ 19)  HTC acknowledged that a Triggering Event had in fact occurred.  (Id.)  After WiAV threatened to sue, HTC made a Conditional Payment to WiAV.  (Id.)

D.    **State Court Litigation**

On May 6, 2013, WiAV filed a breach of contract action against HTC in New York County Supreme Court (the "State Court Action"), seeking Conditional Payments for two

---

[4]  The record is not as to when this first Triggering Event occurred.  It is discussed in WiAV's May 6, 2013 state court complaint, however.  (State Cmplt. (Dkt. No. 22-3) ¶ 19)

other alleged Triggering Events.[5]  (State Court Cmplt. (Dkt. No. 22-3))  In the State Court

Action, WiAV alleged that HTC had licensed the Exclusive Vocoder Patent Rights to Alcatel

Lucent, International Business Machines Corporation ("IBM"), Apple, and "other parties"; that

HTC's licensing agreements constituted Triggering Events under the Contract; and that WiAV

had not made the required Conditional Payments to WiAV.  (Id. ¶¶ 12-14, 15-17, 18-19, 23)

            HTC moved to dismiss, and on May 16, 2016, New York County Supreme Court

Justice Eileen Bransten granted the motion.  (May 16, 2016 State Court Order (Dkt. No. 22-5))

Justice Bransten examined HTC's licensing agreements with Alcatel, IBM, and Apple and

concluded that they did not concern the Exclusive Vocoder Patent Rights.  These agreements

thus did not constitute Triggering Events under the Contract.  (Id. at 7-13; see also Pltf. Opp.

(Dkt. No. 24) at 10-11; Def. Br. (Dkt. No. 23) at 8)  As to WiAV's claim that HTC had entered

into licensing agreements with "other parties," Justice Bransten found that this allegation was too

"broad, general, speculative, and conclusory" to survive a motion to dismiss.  (May 16, 2016

State Court Order (Dkt. No. 22-5) at 14)  Justice Bransten went on to dismiss WiAV's

complaint, and judgment was entered in favor of HTC.  (Id. at 15)

    E.    **WiAV Directs HTC to Transfer the Exclusive**
          **Vocoder Patent Rights to WH Patent**

            Only one Triggering Event occurred before June 1, 2015.  Accordingly, on

October 14, 2017 – pursuant to Section 6(e)(i) of the Contract – WiAV directed HTC to transfer

---

[5]  The Court takes judicial notice of filings made in the state court case.  See Johnson v. Pugh,
No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013) ("A court may take judicial
notice of matters of public record, including pleadings, testimony, and decisions in prior state
court adjudications, on a motion pursuant to Rule 12(b)(6).") (citing Rothman v. Gregor, 220
F.3d 81, 92 (2d Cir. 2000)).

the Exclusive Vocoder Patent Rights to WH Patent.[6]  (Cmplt. (Dkt. No. 1) ¶¶ 4-5, 19, 41;

Contract (Dkt. No. 1-1) § 6(e)(i)) <u>see</u> <u>WiAV</u>, 2020 WL 2216657, at *3.

> ### F.    Alleged Triggering Events Involving
> ### <u>Microsoft, Ericsson, Apple, and Others</u>

In April and June 2018 letters to Microsoft, WH Patent complained that certain

Microsoft products infringed on the Exclusive Vocoder Patent Rights.  (Cmplt. (Dkt. No. 1)

¶ 21)  During a July 2018 telephone conference and in a follow-up email, Microsoft told WH

Patent that Microsoft had obtained licenses for "a significant portion (if not all)" of the Exclusive

Vocoder Patent Rights.  (<u>Id.</u> ¶ 22)

WiAV alleges in the Complaint that "the only way that Microsoft could have

obtained a license for those rights was through HTC and under the terms of the [Contract], which

necessarily gave rise to a Triggering Event."  (<u>Id.</u>)  WiAV claims that HTC breached the

Contract by not notifying WiAV of the Triggering Event within 10 days of its occurrence, and by

not making a $4 million Conditional Payment to WiAV.  (<u>Id.</u> ¶ 23)

The Complaint also alleges, "[o]n information and belief, [that] in or about 2014,

HTC entered into a patent license agreement with Telefonaktiebolaget LM Ericsson," and that

"in or about 2015, HTC entered into a patent license agreement with Apple Inc."  (<u>Id.</u> ¶¶ 48-49)

According to WiAV, given "HTC's long history of blatantly breaching the Agreement, it is only

reasonable to believe that HTC hid additional Triggering Events arising from the Ericsson and

Apple License Agreements as well as other agreements of which WiAV has no knowledge."  (<u>Id.</u>

¶ 50)

---

[6]  In a separate case against HTC, WiAV and WH Patent allege that HTC breached the Contract by refusing to transfer the Exclusive Vocoder Patent Rights to WH Patent.  <u>See</u> <u>WiAV Sols. Inc. v. HTC Corp.</u>, No. 18 Civ. 2595 (PGG), 2020 WL 2216657 (S.D.N.Y. May 7, 2020).

### G.   Alleged Triggering Event Involving Chinese Patent

The Exclusive Vocoder Patent Rights include certain rights protected by a Chinese patent.  (Id. ¶ 24)  In 2018, WiAV learned that HTC had not paid certain maintenance fees associated with this patent, and that as a result of the non-payment of the maintenance fees, the Chinese patent had expired.  (Id.; see also supra n.3)  According to WiAV, "[p]ublicly and permanently abandoning the right to sue third parties for infringement . . . within the most populous country in the world certainly counts as a 'covenant not to sue' and, thus, a Triggering Event for which HTC owes WiAV compensation."  (Cmplt. (Dkt. No. 1) ¶ 25)

WiAV further argues that even if no Triggering Event occurred, "WiAV is still entitled to damages for HTC's failure to keep the Chinese Exclusive Vocoder Patent Rights in force" (id. ¶ 27), because HTC is obligated under Section 2(d) of the Contract to pay maintenance fees associated with the Chinese patent.[7]  (Id. ¶ 35)

## II.   PROCEDURAL HISTORY

The Complaint was filed on May 29, 2019.  (Cmplt. (Dkt. No. 1))  On December 17, 2019, HTC moved to dismiss under Fed. R. Civ. P. 12(b)(6).  (Def. Br. (Dkt. No. 23))  HTC argues that WiAV's claims premised on HTC's alleged licensing agreements with Microsoft, Ericsson, Apple, and "other parties" must be dismissed on res judicata grounds.  HTC further argues – as to all of WiAV's claims – that it has not pled facts sufficient to state a claim.  (Def. Br. (Dkt. No. 23) at 17-29)

---

[7]  As discussed above, Section 2(d) of the Contract provides that "HTC agrees to be . . . in compliance with the assignment provisions of . . . Section 2(a)(ii) of the Skyworks-WIAV Agreement."  (Contract (Dkt. No. 1-1) § 2(d)(ii))  Section 2(a)(ii) of the Skyworks-WIAV Agreement references Section 4(a) of that same Agreement, which provides that WiAV "shall pay one-half (1/2) of [patent] maint[e]nance fees."  (Skyworks-WIAV Agreement (Dkt. No. 29) §§ 2(a)(ii), 4(a))

# DISCUSSION

## I.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Allegations that "are no more than conclusions[] are not entitled to the assumption of truth," however.  Iqbal, 556 U.S. at 679.  A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id., and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007).  While legal conclusions "can provide the complaint's framework, they must be supported by factual allegations."  Iqbal, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).  "On a motion to dismiss for breach of contract, courts look . . . at the contract itself, which by definition is integral to the complaint."  Axiom Inv. Advisors, LLC by & through

Gildor Mgmt., LLC v. Deutsche Bank AG, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) (citing

Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n, 655 F.3d 136, 141 (2d Cir. 2011)).

## II.   ANALYSIS

### A.   *Res Judicata*

#### 1.   Applicable Law

The doctrine of res judicata provides that

> a valid, final judgment, rendered on the merits, constitutes an absolute bar to a
> subsequent action between the same parties, or those in privity with them, upon
> the same claim or demand.  It operates to bind the parties both as to issues
> actually litigated and determined in the first suit, and as to those grounds or issues
> which might have been, but were not, actually raised and decided in that action.
> The first judgment, when final and on the merits, thus puts an end to the whole
> cause of action.

Epperson v. Entm't Express, Inc., 242 F.3d 100, 108-09 (2d Cir. 2001) (quoting Saylor v.

Lindsley, 391 F.2d 965, 968 (2d Cir. 1968) (citations omitted)).

"To prove the affirmative defense [of res judicata,] a party must show that (1) the

previous action involved an adjudication on the merits; (2) the previous action involved the

plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action

were, or could have been, raised in the prior action."  Monahan v. N.Y.C. Dep't of Corr., 214

F.3d 275, 285 (2d Cir. 2000) (citations omitted).  "[T]he burden of proving the elements of res

judicata lies with the party asserting the defense."  Friedman v. Geico Gen. Ins. Co., No. 14-CV-

537 (AMD) (MDG), 2017 WL 10109879, at *11 (E.D.N.Y. Jan. 13, 2017) (citing Monahan, 214

F.3d at 284) (emphasis added).

"The policies underlying res judicata reflect the sensible goal that where possible

all related claims be resolved in one proceeding."  Epperson, 242 F.3d at 109 (emphasis added).

Res judicata "'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial

resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'" EDP Med. Comp. Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

> ### 2.    Application

As discussed above, in the State Court Action, WiAV alleged that HTC had licensed the Exclusive Vocoder Patent Rights to Alcatel Lucent, IBM, Apple, and "other parties"; that HTC's licensing agreements constituted Triggering Events under the Contract; and that WiAV had not made the required Conditional Payments to WiAV.  (State Court Complaint (Dkt. No. 22-3) ¶¶ 12-14, 15-17, 18-19, 23)  The state court dismissed those claims.  (May 16, 2016 State Court Order (Dkt. No. 22-5) at 8, 14-15)

HTC now argues that WiAV's claims – that it entered into licensing agreements with Microsoft, Ericsson, Apple, and "other parties"; that these alleged agreements constitute Triggering Events; and that HTC did not make the required Conditional Payments to WiAV under the Contract – are barred by res judicata.  (Def. Br. (Dkt. No. 23) at 17-20, 22-23) According to HTC, all of WiAV's current claims were referenced in WiAV's "catch-all" claim in the State Court Action that HTC had entered into licensing agreements with "other parties" that constitute Triggering Events.  (Id. at 9, 18-19, 22-23; see State Court Cmplt. (Dkt. No. 22-3) ¶ 23 ("Upon information and belief, HTC has entered into agreements with other parties that constituted Triggering Events regarding which HTC has failed to notify or pay WiAV."))

"'For purposes of res judicata, the scope of litigation is framed by the complaint at the time it is filed.'"  Proctor v. LeClaire, 715 F.3d 402, 412 (2d Cir. 2013) (quoting Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997)) (alteration omitted).  "Acts committed after the filing of the complaint are not within the scope of the plaintiff's claim."  Id.

"'If the second litigation involve[s] <u>different</u> transactions, and <u>especially subsequent</u> transactions, there generally is no claim preclusion.'" <u>Id.</u> (quoting <u>S.E.C. v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1464 (2d Cir. 1996)) (emphasis and alteration in <u>Proctor</u>). "[R]es judicata applies[, however,] . . . where the subsequent action is premised upon 'newly discovered evidence' unless that evidence 'was fraudulently concealed' or 'could not have been discovered with reasonable diligence.'" <u>Ningbo Prod. Imp. & Exp. Co. v. Eliau</u>, No. 11 CIV. 650 PKC, 2011 WL 5142756, at *9 (S.D.N.Y. Oct. 31, 2011) (quoting <u>L-Tec Elecs. Corp. v. Cougar Elec. Org.</u>, 198 F.3d 85, 88 (2d Cir. 1999)) (emphasis added).

Here, WiAV filed its State Court Action on May 6, 2013.  (State Court Cmplt. (Dkt. No. 22-3))  The instant Complaint alleges that HTC entered into undisclosed licensing agreements with Ericsson in 2014 and with Apple in 2015, well after the State Court Action was filed.  (Cmplt. (Dkt. No. 1) ¶¶ 48, 49)  Accordingly, WiAV's claims arising from these alleged licensing agreements are not barred by <u>res judicata</u>.[8]  As to Microsoft, WiAV alleges that it did not learn about HTC's alleged licensing agreement with that company until July 2018, and there is no evidence suggesting that the alleged Microsoft licensing agreement was entered into before May 2013, such that WiAV could have included a claim based on that agreement in the state court complaint.  (Cmplt. (Dkt. No. 1) ¶ 22)  Finally, to the extent that WiAV could have amended its state court complaint – prior to the May 16, 2016 dismissal – to include claims

---

[8]  HTC argues that <u>res judicata</u> is "especially applicable to WiAV's attempt to re-assert a claim with respect to an alleged agreement between HTC and Apple[,] since WiAV already asserted such a claim in the State Court Action."  (Def. Br. (Dkt. No. 23) at 23)  But Justice Bransten dismissed the claim regarding Apple after analyzing a 2011 agreement between HTC and Apple. (May 16, 2016 State Court Order (Dkt. No. 22-5) at 6)  WiAV's claim here is based on HTC's alleged licensing agreement with Apple in 2015.  There is no evidence that Justice Bransten considered the alleged 2015 Apple licensing agreement, which was entered into two years after the State Court Action was commenced.  Accordingly, HTC's <u>res judicata</u> argument regarding the alleged 2015 Apple licensing agreement fails.

based on any of these alleged licensing agreements, WiAV was not required to do so.  See Computer Assocs. Int'l, 126 F.3d at 369-70 ("[T]he scope of litigation is framed by the complaint at the time it is filed. . . . [The] filing of [a] supplemental complaint based on defendant's wrongful conduct occurring after filing of [the] original complaint is not mandatory[.]  The res judicata doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated.") (citations and alterations omitted); see also TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 499 (2d Cir. 2014) ("'That both suits involved essentially the same course of wrongful conduct' is not decisive.  Such a course of conduct may frequently give rise to more than a single cause of action.  While the prior judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'") (quoting Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 327-28 (1955)); Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 383 (2d Cir. 2003) ("Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same 'course of conduct[.]'").

To the extent that HTC entered into "other agreements" with third parties that constitute Triggering Events (Cmplt. (Dkt. No. 1) ¶ 50), it is premature to determine whether any such claims are barred by res judicata.  The record is not clear as to (1) when HTC entered into any such agreements; or (2) whether WiAV could have previously discovered those agreements. Kimso Apartments LLC v. Dish Network Servs. LLC, No. 1:16 CV 6834 (AMD) (RLM), 2017 WL 8780452, at *8 (E.D.N.Y. Dec. 20, 2017) (ruling that it was "premature to rule on res judicata at this stage of the litigation," given the "absence of specific factual allegations about

what the defendants did and when the misconduct occurred"); Houbigant, Inc. v. Dev.

Specialists, Inc., 229 F. Supp. 2d 208, 220 (S.D.N.Y. 2002) ("[T]he basis of Defendants' res

judicata defense is not set forth on the face of the pleadings. . . . The Court declines to exercise

its discretion to depart from the general rule that a res judicata defense is to be considered only

after it is pleaded in a defendant's answer.  Defendant's motion to dismiss . . . on res judicata

grounds is denied as premature.").

**B.**  **Failure to State a Claim**

**1.**  **Applicable Law**

"To state a claim in federal court for breach of contract under New York law, a

complaint need only allege (1) the existence of an agreement, (2) adequate performance of the

contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."[9] Harsco

Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996) (citing Tagare v. Nynex Network Sys. Co., 921 F.

Supp. 1146, 1149 (S.D.N.Y. 1996)).  "When interpreting a contract," the court's "'primary

objective is to give effect to the intent of the parties as revealed by the language of their

agreement.'"  Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., 773 F.3d 110, 113-14

(2d Cir. 2014) (quoting Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill

Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 157 (2d Cir. 2000)) (alterations omitted).

"The words and phrases in a contract should be given their plain meaning, and the contract

should be construed so as to give full meaning and effect to all of its provisions."  Id. at 114

(alterations and internal quotation marks omitted).

---

[9]  The parties agree that New York law governs their dispute.  (Def. Br. (Dkt. No. 23) at 12; Pltf.
Opp. (Dkt. No. 24) at 18)  The Contract provides that "[a]ny claim arising under or relating to
this Agreement shall be governed by the laws of the State of New York."  (Contract (Dkt. No. 1-
1) § 6(d))  Accordingly, the Court applies New York law.

2.      **Application**

a.      **Whether WiAV has Adequately Pled a Triggering Event**

WiAV claims that HTC entered into a licensing agreement with Microsoft, did

not make the required Conditional Payment to WiAV, and thereby breached the Contract.

(Cmplt. (Dkt. No. 1) ¶¶ 21-23, 28-32)  HTC contends that this claim should be dismissed as

"conclusory and wholly speculative."  (Def. Br. (Dkt. No. 23) at 20)

The Complaint asserts that "[i]n April and June 2018, WH Patent wrote a letter to

Microsoft . . . , informing Microsoft that certain of its commercial products infringed a number

of the Exclusive Vocoder Patent Rights."  (Cmplt. (Dkt. No. 1) ¶ 21)  In email and telephone

communications in July 2018, Microsoft informed HTC that it had a license for "a significant

portion (if not all)" of the Exclusive Vocoder Patent Rights at issue.  (Id. ¶ 22)  The Complaint

alleges that Microsoft "obtained a license for those rights . . . through HTC," and that HTC's

licensing of these rights to Microsoft "necessarily gave rise to a Triggering Event."  (Id. ¶¶ 22-

23)  Despite this alleged Triggering Event, HTC never made a Conditional Payment to WiAV.

(Id. ¶ 31)

These allegations are sufficient to state a claim for breach of contract.  Although

HTC posits that Microsoft could have acquired the Exclusive Vocoder Patent Rights from a prior

owner – before HTC acquired the rights in June 2009 (Def Br. (Dkt. No. 23) at 21) – the

Complaint alleges that Microsoft acquired the rights from HTC, and this Court is – at this stage

of the proceedings – required to accept this factual allegation as true.  See Albert v. City of New

York, No. 17-CV-3957-ARR-SMG, 2019 WL 3804654, at *3 (E.D.N.Y. Aug. 13, 2019)

("As long as the plaintiff alleges sufficient factual content to allow the court 'to draw the

reasonable inference that the defendant is liable for the misconduct alleged,' the motion [to

dismiss] will be denied.") (quoting Iqbal, 556 U.S. at 678); Crown Bridge Partners, LLC v. Sunstock, Inc., No. 18 CIV. 7632 (CM), 2019 WL 2498370, at *4 (S.D.N.Y. June 3, 2019) ("The complaint will survive a motion to dismiss as long as it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'") (quoting Iqbal, 556 U.S. at 678).

> To the extent that HTC argues that the Complaint should be dismissed for failure to adequately plead a Triggering Event, HTC's motion will be denied.

> **b.    Whether HTC's Alleged Failure to Pay Maintenance Fees on the Chinese Patent Constitutes a Triggering Event**

> WiAV alleges that HTC caused a Triggering Event by failing to pay maintenance fees associated with a Chinese patent that is part of the Exclusive Vocoder Patent Rights.  WiAV asserts that HTC's failure to pay the maintenance fees caused the Chinese patent to expire. (Cmplt. (Dkt. No. 1) ¶ 24)  Because the Contract defines a Triggering Event to include "HTC granting a covenant not to sue" with respect to "one or more Exclusive Vocoder Patent Rights . . . to any third party" (Contract (Dkt. No. 1-1) § 3(b)(i)(A)), and because "no one can now sue any third parties for" infringing on the expired Chinese patent (Cmplt. (Dkt. No. 1) ¶ 24), WiAV contends that a Triggering Event has occurred for which HTC must make a Conditional Payment.  (Id. ¶ 25 ("Publicly and permanently abandoning the right to sue third parties for infringement . . . within the most populous country in the world certainly counts as a 'covenant not to sue' and, thus, a Triggering Event for which HTC owes WiAV compensation."); see also Pltf. Opp. (Dkt. No. 24) at 8, 24)

> HTC argues that WiAV's claim is at odds with the Contract's plain language, noting that even if HTC caused the Chinese patent rights to expire, HTC did not "grant[] a covenant not to sue . . . to any third party" by failing to pay maintenance fees.  (Def. Br. (Dkt.

No. 23) at 26); see Contract (Dkt. No. 1-1) § 3(b)(i)(A))  HTC further argues that the term
"grant[]" connotes an affirmative act – not an unintended consequence of one's failure to act.
(Def. Br. (Dkt. No. 23) at 26)

A "covenant not to sue" is "'an agreement by one having a present right of action
against another not to sue to enforce such right.'"  New York State Elec. & Gas Corp. v.
FirstEnergy Corp., 766 F.3d 212, 221 (2d Cir. 2014) (quoting Colton v. New York Hosp., 53
A.D.2d 588, 589 (1st Dep't 1976)); see also Dantas v. Citibank, N.A., No. 17-CV-1257 (SHS),
2018 WL 3023158, at *9 (S.D.N.Y. June 18, 2018), aff'd, 779 F. App'x 16 (2d Cir. 2019)
(describing a "covenant not to sue" as "an agreement not to bring future claims").  Assuming
arguendo that HTC did not pay the required maintenance fees, HTC did not thereby agree with
another party not to sue to enforce the patent rights.  Accordingly, to the extent that WiAV
contends that HTC's alleged failure to pay maintenance fees constitutes a Triggering Event, its
breach of contract claim will be dismissed.  See Perks v. TD Bank, N.A., No. 18-CV-11176
(VEC), 2020 WL 1272246, at *2 (S.D.N.Y. Mar. 17, 2020) ("On a motion to dismiss, the Court
may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of
the contract contradicts or fails to support the plaintiff's allegations of breach.") (citing Orchard
Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156-58 (2d Cir. 2016)).

The Complaint also alleges that, in failing to pay maintenance fees, HTC
breached Section 2(d) of the Contract, which provides that "HTC agrees to be bound by the
terms and conditions of any and all obligations which are necessary to make [the] assignment [of
Exclusive Vocoder Patent Rights] effective, including to be in compliance with the assignment
provisions of . . . Section 2(a)(ii) of the Skyworks-WIAV Agreement."  (Contract (Dkt. No. 1-1)
§ 2(d)(ii))  As discussed above, Section 2(a)(ii) of the Skyworks-WIAV Agreement references

Sections 4(a) of that Agreement, which provides that WiAV "shall pay one-half (1/2) of maint[e]nance fees" for the patents.  (Skyworks-WIAV Agreement (Dkt. No. 29) §§ 2(a)(ii), 4(a); Cmplt. (Dkt. No. 1) ¶¶ 35-37)  Given that HTC agreed in the Contract to assume WiAV's obligation under the Skyworks-WIAV Agreement to pay maintenance fees associated with the patents, its alleged failure to do so with respect to the Chinese patent is sufficient to state a claim for breach of the Contract.  (See Cmplt. (Dkt. No. 1) ¶¶ 27, 35-37)

HTC's arguments to the contrary are not persuasive.  HTC contends that Section 2(d) of the Contract does not "refer to maintenance fees at all," much less impose an obligation on HTC to pay maintenance fees.  (Def. Br. (Dkt. No. 23) at 28)  But Section 2(d) references the Skyworks-WIAV Agreement, which imposes an obligation to pay maintenance fees.  HTC argues that Section 2(d) concerns "obligations necessary to render WiAV's assignment of the Exclusive Vocoder Patent Rights to HTC effective," and "does not impose . . . an affirmative obligation on HTC to thereafter maintain the underlying patents to which the Exclusive Vocoder Patent Rights pertain."  (Id. at 28-29)  But Section 2(d) obligates HTC to comply with Section 2(a)(ii) of the Skyworks-WIAV Agreement, which includes an obligation to pay maintenance fees.  (Skyworks-WIAV Agreement (Dkt. No. 29) §§ 2(a)(ii), 4(a))  Section 2(a)(ii) of the Skyworks-WIAV Agreement makes clear that WiAV may only assign the Exclusive Vocoder Patent Rights if the assignee (here, HTC) "assumes" WiAV's obligations to pay maintenance fees.  (See id. §§ 2(a)(ii), 4(a)) (stating that WiAV has the "exclusive right to assign any or all rights under any of the Vocoder Patent Rights to any other person or entity in its discretion; . . . provided that the assignee . . . agrees to assume all related obligations of WIAV including WIAV's . . . obligation[]" to "pay one-half (1/2) of the maint[e]nance fees and costs that become due")  In short, HTC's assumption of WiAV's obligation to pay maintenance fees was necessary

to make the assignment of the Exclusive Vocoder Patent Rights to HTC effective.  By entering

into the Contract, HTC agreed to fulfill this obligation, and WiAV has adequately pled that HTC

breached the Contract by failing to do so.  (Cmplt. (Dkt. No. 1) ¶¶ 27, 35-37)

## **CONCLUSION**

For the reasons set forth above, Plaintiff WiAV's breach of contract claim is

dismissed to the extent that it is premised on WiAV's argument that a Triggering Event occurred

as a result of HTC's failure to pay maintenance fees associated with the Chinese patent.

Defendant HTC's motion to dismiss (Dkt. No. 20) is otherwise denied.  The Clerk of Court is

directed to terminate the motion.

Dated: New York, New York
       June 30, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge